# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

PATRICIA ODETTE and WESLIE JEAN MONDOLO,

JOYCE ROHRBACK and DAVID ROHRBACK,          Case No. 25-13578

CATHERINE SALA,                             Hon.

STANLEY SALA,

WILLIAM SCOTT AND MARY SCOTT,

JASON DIMODICA, and

KYLE HINKLE,

        Plaintiffs,

v.

LENAWEE COUNTY DRAIN COMMISSION,
a political subdivision of the State of Michigan,

CURRENT LENAWEE COUNTY DRAIN COMMISSIONER

EDWIN SCHEFFLER, in his official capacity,
FORMER LENAWEE COUNTY DRAIN COMMISSIONER

JENNIFER ESCOTT, in her official capacity, and

LENAWEE COUNTY, a political subdivision of the State of Michigan,

        Defendants.

TODD F. FLOOD (P58555)
FLOOD LAW, PLLC
155 West Congress Street, Suite 350
Detroit, Michigan 48226
(T) 248-547-1032
(F) 248-547-0140
tflood@floodlaw.com
*Attorney for Plaintiff*

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

There is no other civil action between these parties arising out of the same
transaction or occurrence as alleged in this Complaint pending in this Court, nor
has any such action been previously filed and dismissed or transferred after having
been assigned to a judge.

NOW COMES Plaintiff, PATRICIA ODETTE ("Dr. Odette") and WESLIE JEAN

MONDOLO ("Ms. Mondolo"), individually; JOYCE ROHRBACK and DAVID ROHRBACK

("Mrs. Rohrback," "Mr. Rohrback"); individually, CATHERINE SALA ("Judge Sala"), individually;

STANLEY SALA ("Mr. Sala"), individually; Jason DiModica ("Mr. DiModica"), individually;

WILLIAM SCOTT and MARY SCOTT, individually; and KYLE HINKLE ("Mr. Hinkle"),

individually, by and through their counsel, FLOOD LAW, PLLC, and for their Complaint against

the above-named Defendants, states as follows:

### PARTIES

1.     All Plaintiffs herein are residents of Lenawee County, and/or own property in

Lenawee County.

2.     Dr. Odette owns a lake house at 9742 Devils Lake Hwy, Manitou Beach, Lenawee

County, Michigan (the "Property").

3.     Mr. Hinkle owns and resides at 6188 U.S. Highway 223, Addison, MI 49220.

4.      Mr. And Mrs. David and Joyce Rohrback own the property at 9756 Devils Lake Highway, Manitou Beach, MI 49253.

5.      Judge Sala owns and resides at 6214 US Highway 223, Addison, MI 49220.

6.      Mr. Sala owns the property at 6212 Winter Road, Addison, MI, 49220. Mr. Sala also owns an easement that abuts the pump station that runs to the lake, which includes dock rights.

7.      Mr. DiModica owns the property located at 6226 Quiet Cove Drive, Addison, MI, 49220.

8.      Mr. And Mrs. Scott own the property at 6200 Winter Road, Addison, MI 49220.

9.      Defendant Lenawee County Drain Commission (the "Drain Commission") is a political subdivision of the State of Michigan vested with the statutory authority to construct, maintain, and operate drainage and sewage systems within Lenawee County.

10.     Defendant Edwin Scheffler ("Scheffler"), as the current Lenawee County Drain Commissioner, is responsible for administering and operating drainage and sewage systems within Lenawee County.

11.     Defendant Jennifer Escott served as Lenawee County Drain Commissioner from 2015 to 2024, during which time a sewer lift station was installed on Dr. Odette's Property.

12.     Defendant Lenawee County is a political subdivision of the State of Michigan, which exercises governmental authority over municipal services and infrastructure within its boundaries, including oversight of drainage and sewage systems.

## JURISDICTION AND VENUE

13.     This is a civil action brought seeking unpaid "just compensation" and other monetary damages against Defendants for negligence, public nuisance, and private nuisance, as well as violations

of the Fifth and Fourteenth Amendments of the United States Constitution, the Michigan

Constitution, Article X, and the Michigan Environmental Protection Act.

14.     This Honorable Court has jurisdiction over Plaintiff's federal claims pursuant to 28

U.S.C. §§ 1331 and 42 U.S.C. § 1983.

15.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to

28 U.S.C. § 1367 as those claims arise out of the same facts as the federal claims and all claims are part

of the same case or controversy.

16.     All defendants reside or own property in this judicial district, as the Lenawee County

Drain Commission and Lenawee County are political subdivisions of Lenawee County, Michigan, and

the individual defendants, sued in their official capacities, reside in this District by virtue of their

positions within Lenawee County. A substantial part of the events giving rise to the claims occurred

in this District, including defendants' decisions regarding the design and construction of the sewage

lift station and the ongoing operation of the infrastructure that continues to emit toxic gases and cause

property damage, both of which occurred within Lenawee County, Michigan. The real property that

is the subject of this action is located within Lenawee County, Michigan. Lenawee County is within

the boundaries of the Eastern District of Michigan. Venue is therefore proper in this Court pursuant

to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

**DR. ODETTE'S INVESTMENT IN THE PROPERTY**

17.     In 2015, Dr. Odette purchased the Property for use as a recreational lake house and

residential retreat. Dr. Odette paid $500,000 for the Property, which she acquired with reasonable

investment-backed expectations of enjoying peaceful lakefront residential living, utilizing the Property

for recreational purposes, and experiencing continued property value appreciation.

18.     Dr. Odette invested significant resources in the Property with the reasonable

expectation that existing compatible infrastructure would continue or be replaced with similarly compatible systems.

19.     The Property contained an existing sewage pump system consisting of a small, unobtrusive structure with most components located underground, and that operated without creating noise, odor, or visual problems.

20.     At that time, the Property had a fair market value of over $1,000,000.

**PATTERN OF ENVIRONMENTAL HARM**

21.     The Drain Commission's infrastructure decisions have created a pattern of environmental harm in the area surrounding Dr. Odette's Property and the properties of the other Plaintiffs, beginning with a 2023 incident in which sewage pumps leaked sewage onto properties and into Devils Lake.

22.     The 2023 sewage leak rendered physical contact with the lake hazardous and necessitated official warnings against swimming, as documented in Exhibit 1.

23.     In the summer of 2024, the Lenawee County Health Department confirmed the presence of harmful algal blooms at Devils Lake, which rendered the lake hazardous and necessitated official warnings against swimming, as documented in Exhibit 2.

24.     In the summer of 2025, the Lenawee County Health Department was notified by the Michigan Department of Health and Human Services of the presence of harmful algal blooms at Devils Lake, which rendered the lake hazardous and necessitated official warnings against swimming, as documented in Exhibit 3.

25.     The Drain Commission continues to operate systems that pose ongoing health and environmental risks Plaintiffs, despite its history of environmental contamination.

**INFRASTRUCTURE REPLACEMENT PLANNING AND FRAUDULENT EASEMENT ACQUISITION**

26.     The Defendant Drain Commission evaluated the three approaches below for replacing sewage pump systems in the area, including the pump system serving Dr. Odette's Property (designated as "Station I"), as documented in the Probable Construction Cost for Rollin Woodstock Lift Station Replacement – Station I, attached hereto as Exhibit 4:

    a.   Rehabilitate Existing Well/Dry Well – Cost Station I: $264,000

    b.   Convert to Submersible Station with Buried Valve Vault – Cost Station I: $316,000

    c.   Convert to Submersible Station with Prefab Valve House – Cost Station I: $328,000

27.     Despite having identified less expensive alternatives that would avoid aesthetic and health problems, the Drain Commission chose the most problematic and costly option (Option 3) for a one-size-fits-all approach. This option led to the mostly underground pumps in the area being replaced with noisy, smelly, above-ground pumps that were eyesores in the residents' neighborhoods.

28.     The Defendant Drain Commission's own May 2018 assessment acknowledged that "in instances where an above grade structure may negatively affect aesthetics, a below grade valve vault is an alternative," as seen in Exhibit 5. Defendants also acknowledged in their own August 2020 final assessment that a "drawback" to this approach is that "the structure is visible to residents and may block views," as documented in Exhibit 6.

29.     The only justification for this harmful approach was worker convenience, as workers did not like going into fully underground pumps because of the summer heat, and they would not have to perform underground maintenance with the new structure. The desires of workers, who would likely perform maintenance rarely, if at all, were prioritized over the constitutional rights of the property owners.

30.     To implement their infrastructure project, the Defendants needed to obtain easement

rights from the affected property owners, including Dr. Odette.

31.     During the easement acquisition process, Defendants falsely represented to Devils Lake residents that the new pump station would not be materially different from the existing system. Specifically, Defendants deliberately chose to only convey that they needed permission for an easement to "improve the current lift station," not that they were adding a completely new eyesore to their yards. Defendants failed to notify Dr. Odette that the new stations would significantly change the character, appearance, and impact on residential properties.

32.     Other residents were informed that the footprint of the new stations would be buried or smaller than what was previously there.

33.     Dr. Odette, as well as the other Plaintiffs, agreed to grant easement rights to Defendants for the pump station project in reliance on Defendants' false representations.

34.     Defendants then proceeded with a project that was dramatically different from what they had represented to residents. Had Plaintiffs been aware of the true nature of this project, they would not have signed the documents presented.

**INSTALLATION AND IMMEDIATE HEALTH PROBLEMS**

35.     On September 5, 2024, the Drain Commission installed an aboveground sewage pump on Dr. Odette's lakefront Property.

36.     The new pump system immediately began emitting toxic sewer gases, resulting in unbearable odors and unpleasant noises that negatively affected Dr. Odette's Property, as well as the property of the surrounding Plaintiffs. The pump system's design deliberately vents sewer gas above ground rather than below ground, contrary to industry standards in residential areas.

37.     Mr. Hinkle expressed his concerns to Defendant Drain Commission and pointed out another area was suitable for the station to be installed without blowing these fumes downwind towards the residents. However, the Drain Commission said the engineers had already drawn up their

plans, so there was nothing more to be done (even though the stations weren't completely installed yet).

38.     Dr. Odette contacted Defendant Scheffler on May 5, 2025, to report that the lift pumps were leaking sewage gas and that the station's odor and sound were unbearable. Dr. Odette also informed Defendant Scheffler that long-term, low-level exposure to sewer gas may lead to fatigue, loss of appetite, headaches, irritability, poor memory, and dizziness, and further warned that breathing very high levels of the pump's hydrogen sulfide **can cause death** within just a few breaths.

39.     Dr. Odette specifically informed Defendant Scheffler that the toxic emissions were potentially harmful to her partner, Plaintiff Mondolo, who suffers from chronic obstructive pulmonary disease, or COPD. COPD is known to be triggered by environmental pollutants or significant changes in the environment.

40.     Additionally, some of Dr. Odette's neighbors suffer from pre-existing respiratory conditions and would continue to suffer adverse effects from the toxic gas emissions, which she relayed to Defendant Scheffler.

41.     Mr. Hinkle is a quadriplegic who uses a wheelchair. Half of his lungs are paralyzed, meaning that he is susceptible to toxic chemicals becoming trapped in his lungs because he is unable to fully exhale. This makes his risk for illness much higher, which led him to be deeply concerned and reach out to the Drain Commission, who brushed his health concerns under the rug.

42.     Mr. And Mrs. Scott have a son who has Down Syndrome and respiratory concerns. These respiratory concerns are exacerbated by the odors and chemicals coming from the pump house on the neighboring property.

43.     Mr. Hinkle called Kennedy Industries, who sold the stations, and was informed that these stations **are not ideal for residential areas** because of these problems.

**INADEQUATE GOVERNMENT RESPONSE**

44.     Once faced with Dr. Odette's willingness to contact the news media and pursue litigation if an adequate remedy was not reached, Defendant Scheffler responded that he would notify Dr. Odette without hesitation of any developments. However, as of filing, Defendant has failed to provide adequate remediation or offer any indication that Dr. Odette's concerns are taken seriously.

45.     On May 13, 2025, Defendant Scheffler informed Dr. Odette that the Drain Commission was applying for a permit to install odor control filters. He then claimed that testing had indicated sulfide emissions were undetectable, despite Dr. Odette's ongoing experience of overwhelming toxic odors. Dr. Odette's neighbors also experienced frequent disruptions to their lifestyle due to the odors.

46.     Dr. Odette informed Defendant Scheffler that odor control filters reduce the sewer gas smell enough that people stop making frequent complaints, but that they are not the permanent fix she seeks, as they are ineffective for a prolonged period of time. Additionally, the noise complaints and health issues posed by the sewage pumps have not subsided.

47.     Dr. Odette is now burdened with shingles and insomnia as a result of the sewage pumps. She was not experiencing these issues before the installation of the above-ground sewage pumps.

**PROPERTY VALUE IMPACT**

48.     Furthermore, the installation of the aboveground sewage pumps has substantially diminished property value in the area. Realtor Mark Riggle has estimated a 10-20% reduction in property value resulting from the installation of the sewage pump, as documented in Exhibit 7.

49.     Properties around Devils and Round Lake that previously sold quickly now remain on the market for extended periods due to the installation of these sewage pumps.

**ONGOING NUISANCE CONDITIONS**

50.     The aboveground pump system creates continuous noise pollution that substantially

interferes with the Plaintiff's peaceful enjoyment of their lakefront Property.

51.     The system regularly emits toxic sewer gases, producing overwhelming odors. These noxious odors are so pervasive that the smell seeps into the house and clothing whenever the window is open.

52.     The large size and industrial appearance of the aboveground machinery create an eyesore that detracts from the aesthetic character of the residential lakefront area.

53.     The combination of noise, toxic odors, and visual repugnance has rendered Dr. Odette's Property substantially unusable for its intended recreational and residential purposes.

54.     Children in the neighborhood are attracted by the box, and frequently have to be pulled away from the "electrical jungle gym" that it presents. This causes great concern for Plaintiffs, especially Judge Sala, who is pregnant and fears a future where her daughter harmed as the result of the open hazard or noxious gasses that it presents.

55.     Additionally, the back-up drain that runs through many of the Plaintiff's properties disposes of sewage directly on resident's beaches, causing even further health concerns.

**GOVERNMENT ADMISSION OF WRONGDOING AND REFUSAL TO REMEDY**

56.     At a June 24, 2025 meeting between affected residents and Drain Commission representatives, including Defendant Scheffler, Drain Commission officials acknowledged the ongoing problems with odor, noise, and aesthetic impacts.

57.     Sewer/Water Superintendent Jason Morris confirmed that the decision to use aboveground systems was based on worker convenience, admitting that workers did not want to work in underground systems during summer heat.

58.     Defendant Scheffler explicitly stated that the Drain Commission would not resolve the lift pump situation without a court order, demonstrating deliberate refusal to remedy known constitutional violations.

59.     At an August 6, 2025 meeting, the Drain Board informed the residents that if they wanted replacement pumps, they would have to be paid for out of their own pocket, a pricey and unreasonable option. This suggestion was given even after presentations from residents that truthfully conveyed that they were tricked into the changes and that they collectively were experiencing health issues.

**COUNT I**
**IMPROPER TAKING WITHOUT JUST COMPENSATION IN VIOLATION OF THE**
**FIFTH AND FOURTEENTH AMENDMENTS, BROUGHT UNDER 42 U.S.C. § 1983**

60.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

61.     This claim is brought pursuant to 42 U.S.C. § 1983 for violations of Dr. Odette's and all Plaintiff's rights under the Fifth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment.

62.     Defendants, acting under the color of state law, have effected a regulatory taking of Plaintiff's Property without just compensation in violation of the Fifth Amendment.

63.     Under the balancing test established in *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978), Defendants' conduct constitutes a regulatory taking because:

   a.  Character of Government Action: Defendants' conduct was arbitrary and capricious, prioritizing employee convenience over constitutional rights and the well-being of an entire residential neighborhood, ignoring industry standards and their own engineering advice, and using misrepresentations to obtain necessary property rights;

   b.  Investment-Backed Expectations: Defendants' fraudulent representations during easement acquisition and their arbitrary departure from compatible underground infrastructure frustrate Plaintiff's reasonable investment-backed

Page 11 of 20

expectations of continued peaceful residential enjoyment with a station conforming to industry standards; and

     c.   Economic Impact: Defendants' actions have diminished Plaintiff's property value by 10-20% and rendered the property functionally unusable for its intended lakefront recreational purposes amid toxic gas emissions.

64.    Defendants' operation of the sewage infrastructure on adjacent government-owned land creates spillover effects that substantially interfere with Plaintiff's private property rights.

65.    Defendants were aware of less costly alternatives that would have avoided the constitutional violation but deliberately chose the most harmful and expensive option for illegitimate purposes.

66.    As a direct and proximate result of Defendants' regulatory taking, Plaintiffs have suffered substantial damages, including, but not limited to, diminished property value, loss of use and enjoyment, and ongoing interference with property rights.

67.    Defendants intentionally, deliberately, and recklessly disregarded Plaintiff's clearly established constitutional rights.

## COUNT II
## INVERSE CONDEMNATION IN VIOLATION OF THE MICHIGAN CONSTITUTION, ARTICLE X

68.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

69.    This claim is brought under Article X, Section 2 of the Michigan Constitution.

70.    Defendants' conduct constitutes a regulatory taking under the Michigan Constitution for the same reasons set forth in Count I.

71.    The injury to Plaintiffs is unique or special because the toxic gases emitted by the

stations inflict increased harm on residents, including Plaintiff Mondolo, who suffers from chronic obstructive pulmonary disease, as well as Plaintiff Judge Sala, who is pregnant.

72.     As a direct and proximate result of Defendants' inverse condemnation, Plaintiffs have suffered substantial damages, including, but not limited to, diminished property value, loss of use and enjoyment, and ongoing interference with property rights.

73.     Defendants intentionally, deliberately, and recklessly disregarded Plaintiff's clearly established rights under the Michigan Constitution.

## COUNT III
## VIOLATION OF PROCEDURAL DUE PROCESS, BROUGHT UNDER 42 U.S.C. § 1983

74.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

75.     The Fourteenth Amendment guarantees procedural due process to Plaintiffs.

76.     Plaintiffs have a constitutionally protected property interest in the value of her Property.

77.     Defendants have denied Plaintiffs these rights by failing to provide for any procedure, such as notice, an opportunity to be heard, or a claims process for Plaintiffs to recover the value of their Property.

78.     As a direct and proximate result of Defendants' procedural due process violation, Plaintiffs have suffered substantial damages, including, but not limited to, diminished property value, loss of use and enjoyment, health deterioration, and ongoing interference with property rights.

79.     Plaintiffs do not have an adequate remedy at law except as set forth in this Complaint.

## COUNT IV
## VIOLATION OF SUBSTANTIVE DUE PROCESS,
## BROUGHT UNDER 42 U.S.C. § 1983

80.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

81.     The Fourteenth Amendment guarantees substantive due process to Plaintiffs.

82.     Plaintiffs have a constitutionally protected property interest in the value of their Property and the right to possess, use, enjoy, and sell their Property without arbitrary governmental interference.

83.     Defendants, acting through their official capacities and pursuant to customs, policies, and/or practices, denied Plaintiffs their constitutional right to fair and just treatment during executive acts and **deceptive communications** from Drain Commission officials who intentionally acted and deprived Plaintiffs of their property rights.

84.     Defendants led Plaintiffs to believe that the installation of the new stations would not significantly alter the character, appearance, or impact on residential properties.

85.     Defendants have violated the Fourteenth Amendment of the United States Constitution, as Defendants' officials engaged in conduct that "shocks the conscience" in the constitutional sense.

86.     As a direct and proximate result of Defendants' substantive due process violation, Plaintiffs have suffered substantial damages, including, but not limited to, diminished property value, loss of use and enjoyment, health deterioration, and ongoing interference with property rights.

## COUNT V
## PRIVATE NUISANCE

87.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

88.     Defendants' operation of the aboveground sewage pump system constitutes a private

nuisance that substantially and unreasonably interferes with Plaintiff's use and enjoyment of her Property.

89.     The continuous emission of toxic sewer gases creates overwhelming odors that render Plaintiff's Property unusable.

90.     The constant noise from pump operation substantially and unreasonably interferes with Plaintiff's peaceful enjoyment of their lakefront residential Property.

91.     The visual repugnance of the large aboveground structure destroys the aesthetic character of the residential lakefront setting.

92.     The combination of toxic odors, noise pollution, and visual impacts creates conditions that no reasonable person should be expected to tolerate in a residential area.

93.     Defendants' nuisance is intentional, as they had actual knowledge that their infrastructure design would create these harmful conditions. Yet, they proceeded to move forward with the design anyway for the illegitimate purpose of employee convenience.

94.     Defendants had available less-costly alternatives, including underground valve vault systems, that would have provided the same utility service without creating nuisance conditions.

95.     Dr. Odette continues to suffer ongoing health problems, including insomnia, shingles, and Post Herpetic Neuralgia because of her exposure to toxic gases. She must now frequently see an Internal Medical Doctor and Neurologist.

96.     Mr. Hinkle is at extreme risk when faced with breathing in these toxic fumes due to his lung condition, and now must mitigate those risks daily at his residence.

97.     The harm to Plaintiffs is substantial, ongoing, and continuing, requiring immediate abatement.

98.     As a direct and proximate result of Defendants' private nuisance, Plaintiffs have suffered damages including, but not limited to, diminished property value, loss of use and enjoyment,

and health deterioration.

## COUNT VI
## PUBLIC NUISANCE

99.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

100.     Defendants have control over the new sewer station and the land on which the station is located.

101.     Defendants' operation of the sewage pump system violates Michigan public nuisance law by substantially and unreasonably interfering with the health, safety, and welfare of the public.

102.     The emission of toxic sewer gases affects many residents around Devils and Round Lake, creating a public health hazard.

103.     The 2023 sewage leak that contaminated the lake put the Defendants on notice of the interference with the general public's safety, while also demonstrating the ongoing public environmental and health risks posed by the Defendants' infrastructure operations.

104.     Defendants' conduct affects the public's right to reasonably clean air and a safe residential environment free from toxic gas emissions.

105.     The intrusion into the residential lakefront area affects the general public's interest in maintaining the character and habitability of residential neighborhoods.

106.     Dr. Odette has suffered a special injury different in kind from that suffered by the general public, including, but not limited to, her and her partner's health deterioration. Other Plaintiffs have similarly suffered special injuries different in kind from that suffered by the general public due to their proximity to toxic gases.

107.     The public nuisance is ongoing and continuous, requiring immediate abatement to protect public health and safety.

## COUNT VII
## NEGLIGENCE

108.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

109.    Defendants owed Dr. Odette and Plaintiffs a duty to exercise reasonable care in the design, construction, and operation of sewage infrastructure to avoid creating unreasonable risks of harm to neighboring residential properties.

110.    Defendants breached their duty of care by:

  a. Ignoring their own engineers' warning about aesthetic problems;

  b. Choosing aboveground venting systems contrary to industry standards for residential areas;

  c. Selecting the most expensive and harmful option without adequate justification; and

  d. Continuing to operate systems known to create health hazards.

111.    As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered damages including, but not limited to, diminished property value, loss of use and enjoyment, and health deterioration.

## COUNT VIII
## MICHIGAN ENVIRONMENTAL PROTECTION ACT VIOLATION
### (MCL § 324.1701 et seq.)

112.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

113.    This claim is brought pursuant to the Michigan Environmental Protection Act (MEPA), MCL § 324.17 et seq.

114.     The toxic gases emitted from the Defendants' sewer station travel beyond the government-owned land and contaminate the air resources on neighboring properties, including Dr. Odette's Property and the properties of all other Plaintiffs.

115.     Defendants' operation of the new sewage pump system constitutes pollution, impairment, and destruction of the air within the meaning of MEPA.

116.     Specifically, Defendants' conduct has resulted in the continuous emission of toxic sewer gases into the residential air environment.

117.     Defendants' emissions have eroded public trust in air quality.

118.     Plaintiffs do not have an adequate remedy at law except as set forth in this Complaint.

119.     Plaintiffs have standing under MEPA as a person directly affected by the Defendants' pollution and environmental degradation.

120.     Defendants' conduct violates public trust and environmental protection standards.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Patricia Odette, Weslie Jean Mondolo, Joyce Rohrback, Dave Rohrback, Judge Catherine Sala, Stanley Sala, Jason DiModica, William Scott, Mary Scott, and Kyle Hinkle respectfully request that this Honorable Court:

A. Enter judgment in favor of Dr. Odette and all Plaintiffs and against all Defendants on all counts.

B. Award compensatory damages in an amount to be determined at trial, including but not limited to:

   i.   Diminution in property value (at minimum $100,000 to $200,000 per property);

   ii.  Loss of use and enjoyment during the period of taking;

   iii.      Medical expenses and ongoing health treatment costs related to toxic gas exposure;

   iv.      Environmental remediation costs;

   v.      Expert consultation fees;

   vi.      Insurance complications and additional costs;

   vii.      Property damage;

   viii.      Pain and suffering; and

   ix.      Punitive damages based on Defendants' willful, wanton, and reckless conduct in deliberately exposing residents to toxic gases for the sake of employee convenience.

C. **Grant permanent injunctive relief requiring Defendants to**:

   i.      Immediately cease the emission of toxic sewer gases into the residential neighborhood;

   ii.      Install underground valve vault systems with proper belowground venting consistent with industry standards for residential areas;

   iii.      Remove the existing aboveground valve house structure;

   iv.      Restore the pump station infrastructure to a configuration compatible with the residential lakefront setting;

   v.      Submit to ongoing environmental monitoring; and

   vi.      Implement all corrective measures required by regulatory agencies.

D. Award the costs of environmental abatement and ongoing monitoring;

E. Award enhanced damages based on the intentional nature of the Defendants' conduct;

F. Award attorney fees and costs as provided by law;

G. Award prejudgment interest on all damages from the date of each violation; and

H. Grant such other and further relief as this Court deems just and equitable.

Respectfully submitted,

**FLOOD LAW, PLLC**

/s/ Todd F. Flood

**TODD F. FLOOD (P58555)**
155 West Congress Street, Suite 350
Detroit, Michigan 48226
(T) 248-547-1032
(F) 248-547-0140
tflood@floodlaw.com
*Attorney for Plaintiff*

Dated: November 10, 2025

## DEMAND FOR JURY TRIAL

Plaintiffs, PATRICIA ODETTE et. al., by and through their counsel, FLOOD LAW,

PLLC, hereby demands a trial by jury in the above-captioned matter.

Respectfully submitted,

**FLOOD LAW, PLLC**

/s/ Todd F. Flood

**TODD F. FLOOD (P58555)**
155 West Congress Street, Suite 350
Detroit, Michigan 48226
(T) 248-547-1032
(F) 248-547-0140
tflood@floodlaw.com

*Attorney for Plaintiff*

Dated: November 10, 2025